# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CHRISTINE LUCERO,
*as next friend to Dan Lucero,*

      Plaintiff,

vs.                                                      Case No. 2:19-cv-00445 KWR/KRS

CITY OF CLOVIS POLICE DEPARTMENT,
BRENT AGUILAR, TRAVIS LOOMIS,
and DOUGLAS FORD,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment, filed on October 21, 2019 (**Doc. 30**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is not well-taken in part and, therefore, is **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

This case arises out of a February 22, 2019 alleged excessive force incident. Defendants responded to a call from Mr. Lucero's mother that he was suicidal. Plaintiff alleges Mr. Lucero was going to get his shoes and exit his apartment when Defendants entered and directed a police service dog to attack Mr. Lucero. Plaintiff alleges that Defendants violated Mr. Lucero's Fourth Amendment rights, and various state law rights, by using excessive force.

Plaintiff filed this case under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, alleging the following claims against the Defendants:

Count I: Fourth Amendment claim against Defendants Brent Aguilar and Travis Loomis (Excessive Force);

Count II: Custom and Policy of Violating Constitutional Rights claim against Official Capacity Defendants;

Count III: Battery claim against Defendant Brent Aguilar; and

Count IV: Assault claim against Defendant Brent Aguilar.

Defendants moved for summary judgment on the federal civil rights claims and asserted qualified immunity. **Doc. 30.** Defendants argue that the there was no constitutional violation because the force used was objectively reasonable under the circumstances. The Court construes this motion as raising qualified immunity as to Count I (excessive force).

## LEGAL STANDARD

A motion for summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996). To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co*., 853 F.2d 768, 771-72 (10th Cir. 1988) (quotation marks and citations omitted).

## UNDISPUTED FACTS

For the qualified immunity analysis, the Court generally takes Plaintiff's version of the facts that are supported in the record. *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018). Defendants expressly admit Plaintiff's responsive statement of facts and did not controvert any fact. **Doc. 40 at 1.** Therefore, the Court considers Plaintiff's facts undisputed for purposes of this motion and need not look to the underlying record to determine if the undisputed facts are supported in the record. D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted."); *see Gullickson v. Southwest Airlines Pilots' Ass'n*, 87 F.3d 1176, 1183 (10th Cir. 1996) (applying similar local rules of District of Utah); *See, e.g., Russell v. Cozart*, 74 F. App'x 886, 887 (10th Cir. 2003). Below are Plaintiff's version of the facts which are undisputed by Defendants.

Mr. Lucero's mother called the City of Clovis Police on February 22, 2019 claiming he was suicidal. Clovis Police Department ("CPD") officers, including Defendants Loomis and Aguilar responded to the call. When they arrived, Defendant Loomis made contact with Mr. Lucero's mother in the lobby of the building and discussed the situation. Defendant Aguilar planned to use force on Mr. Lucero immediately. Mr. Lucero's mother told Defendants that he did not own any weapons and she had never seen him with a gun.

Defendants did not believe Mr. Lucero's safety was immediately in jeopardy, as approximately 13 minutes passed before officers went upstairs to check on him. Before going to the apartment, Defendant Aguilar went to his unit to get his Police Service Dog, PSD Leo. PSD Leo is a Belgian Malinois. This breed of dog shakes, tugs, and pulls its prey, causing severe injuries.

As Defendant Aguilar took PSD Leo out of the car, he asked the dog, "You ready, bubba?" preparing for an attack. There is a glass partition and door between the stairwell in the building

and the entrance to Mr. Lucero's mother's apartment. Defendant Loomis made contact with Mr. Lucero at the glass partition and spoke with him through it.

Defendants told Mr. Lucero they were there to check on his welfare. Mr. Lucero assured officers he was alright. Defendant Loomis continued asking him to step out from behind the door and assured him they were not there to arrest or hurt him. Mr. Lucero told officers he did not trust them and did not believe that his mother called them to check on his well-being. Mr. Lucero made no threatening statements or gestures.

As Mr. Lucero spoke with officers, Defendant Aguilar continued to prepare PSD Leo for an attack. **Doc. 34, (Ex 2., 23:19:30-33 "See him? You see him, Leo?").** Defendant Aguilar told Defendant Loomis he would release PSD Leo if Mr. Lucero stepped back into the apartment.

Mr. Lucero agreed to step out to speak with Defendants once he put on his shoes. Mr. Lucero reentered his mother's apartment and got his shoes. Four officers entered the apartment with their guns drawn. The moment Mr. Lucero entered the apartment, Defendant Aguilar decided to command PSD Leo to attack. *See* **Doc. 34 at 6**, Additional Statement of Fact X ("Come out here, the dog's gonna bite you, Dan").

When Defendants entered the apartment, Mr. Lucero was standing in his living room holding his shoes in one hand and nothing in the other. Mr. Lucero's empty hand was up.

Without waiting to see if Mr. Lucero was a threat to himself or others, Defendant Aguilar released PSD Leo on Mr. Lucero within four seconds of entering the apartment, yelling "Fass! Fass! Fass! Fass! Fass! Fass!" **Ex. 3 at 23:21:24 to 23:23:46.** "Fass" is an attack command. PSD Leo attacked Mr. Lucero for approximately 33 seconds, continuously, until Defendant Aguilar commanded him to release Mr. Lucero's leg.

As PSD Leo attacked, Defendant Aguilar further escalated the situation by yelling at Mr. Lucero, "Get on the fucking ground. Get him cuffed! Get him cuffed! Get him cuffed! Get him cuffed! Get him cuffed! Get him cuffed! Get him cuffed! Get him cuffed! Danny be quiet. Daniel, be quiet. Daniel, be quiet. Daniel, be quiet. Bad guy stop fighting my dog. Bad guy stop fighting my dog. Leo, Loos."

Loos is a command for the canine to release. Defendant Aguilar allowed the attack to continue for this extended period of time. In fact, Defendant Aguilar used the phrase "Bad guy, stop fighting my dog" as a command to further aggress PSD Leo during the attack.

As a result of this attack, Mr. Lucero sustained serious injuries, requiring extensive medical treatment. Mr. Lucero was never charged with or arrested for any crime stemming from this incident.

## DISCUSSION

Defendants argue they are entitled to qualified immunity for the excessive force (Count I) claim.[1] As explained above, the Court analyzes whether the Defendants used excessive force through Plaintiff's version of the facts, all of which are undisputed by Defendants. *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018); **Doc. 40 at 1.**

I. **Qualified Immunity as to Individual Defendants**.

The individual Defendants have asserted the defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

[1] In a footnote in a reply brief, Defendants asserted that they maintain their objection to Plaintiff's next friend standing. If Defendants question standing or the Court's subject matter jurisdiction, they should file an appropriate motion and the Court will hear their argument.

known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012).

When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must put forward evidence showing (1) that the defendant violated plaintiff's constitutional rights, and (2) the right at issue was clearly established at the time of the violation. *Id*. If the plaintiff fails to establish either part of the two-part inquiry, the court must grant the defendant qualified immunity. *Id.*

"In determining whether the plaintiff meets this burden, [the Court] ordinarily accept[s] the plaintiff's version of the facts—that is, the facts alleged." *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (quotation marks omitted). However, Plaintiffs' versions of the facts must find support in the record. *Id.* If Plaintiffs meet their qualified immunity burden, the Court then conducts a standard summary judgment analysis considering both parties' facts and records. *Id.*, *citing Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011).

## II. Excessive Force Claim Pursuant to Fourth Amendment against Individual Defendants.

### A. Constitutional Violation.

The parties agree that the Fourth Amendment applies to Plaintiff's excessive force claim. *See McCowan v. Morales*, 945 F.3d 1276, 1283 (10th Cir. 2019). The Court considers Fourth Amendment "excessive force claims under a standard of objective reasonableness, judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Pauly v. White*, 874 F.3d 1197, 1215 (10th Cir. 2017) (internal quotation marks omitted), *cert. denied*, ––– U.S. ––––, 138 S. Ct. 2650, 201 L.Ed.2d 1063 (2018). The Court evaluates the totality

of circumstances, "allow[ing] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Plumhoff v. Rickard*, 572 U.S. 765, 774-75, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014) (brackets and internal quotation marks omitted).

Defendants violate Mr. Lucero's "Fourth Amendment right to be free from excessive force during an arrest if [their] actions were not 'objectively reasonable' in light of the facts and circumstances confronting [them]." *McCowan*, 945 F.3d at 1283 (internal quotation marks and citation omitted). To determine the objective reasonableness of the use of force, the Court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* In conducting this balancing, the Court considers the totality of the circumstances, including "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotation marks and citations omitted).

Under Plaintiff's version of the facts, there was no crime at issue. Defendants were there to check on Mr. Lucero's welfare, as his mother claimed he was suicidal. Moreover, there is nothing in Plaintiff's undisputed facts that would suggest that Mr. Lucero was an immediate threat to the safety of the officers or others or that he threatened anyone. Officers waited at the complex for almost fifteen minutes before they made contact with Mr. Lucero. When they arrived at his apartment, Mr. Lucero spoke to Defendants and assured them he was "ok". Mr. Lucero did not possess a weapon and there was no evidence or warning that Mr. Lucero had a weapon. Rather, his mother told officers that he did not have a gun and never owned one.

Assuming the arrest or detention was proper, Mr. Lucero was not actively resisting arrest or evading arrest when Defendant Aguilar released Leo to attack him. Defendants do not dispute that Mr. Lucero was not resisting arrest. *See* **Doc. 40 at 1** (admitting Plaintiff's facts). Rather, Defendant Aguilar was attempting to comply when Defendant Aguilar released PSD Leo. He stated he would come out of the apartment after he got his shoes. When Defendants entered the apartment, they found him standing in the living room with one hand up, and the other hand holding his shoes. Plaintiff's facts assert that he ordered PSD Leo to attack Mr. Lucero, likely before Mr. Lucero could comply with Defendants' commands.

Although Mr. Lucero did not initially comply with Defendants' orders to come out of the apartment, a reasonable jury could find that Mr. Lucero was not resisting arrest at the time Defendant Aguilar ordered PSD Leo to attack Mr. Lucero. Moreover, Plaintiff's version of the facts assert that the force continued after he was on the ground subdued. Rather than release PSD Leo, Defendant Aguilar further aggressed PSD Leo while Mr. Lucero was on the ground. *See McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) ("Our cases have consistently concluded that a suspect's initial resistance does not justify the continuation of force once the resistance ceases."); *See Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016) ("Although use of some force against a resisting arrestee may be justified, continued and increased use of force against a subdued detainee is not."); *Herrera v. Bernalillo Cty. Bd. of Cty. Comm'rs*, 361 Fed.Appx. 924, 928 (10th Cir. 2010) (unpublished) (a reasonable jury could find that the alleged force was excessive where the defendants "acknowledge[d] that, whatever apprehensions of possible flight might have existed when they first saw [the plaintiff], by the time [of the alleged force] further flight was no more than 'certainly possible' and was 'perhaps unlikely' " (citation omitted); *Osterhout v. Morgan*, 763 F. App'x 757, 762 (10th Cir. 2019) (although plaintiff previously fled, reasonable officers should

have realized that plaintiff, standing still with hands raised, that circumstances changed and plaintiff was no longer an immediate threat).

Defendants argue that they were entitled to take Mr. Lucero into custody based on the community caretaker exception to protect him. Plaintiff argues that the community caretaker exception is irrelevant to whether the force used was reasonable or excessive. The significance of the community caretaker function here is unclear and Defendants have not asserted undisputed facts justifying Mr. Lucero's detention under the community caretaker exception.

Moreover, a reasonable jury could conclude that Mr. Lucero entering his apartment to retrieve his shoes did not justify the amount of force used by the officers in releasing the police service dog. Defendants never told Mr. Lucero that he was detained and was not free to move around the house. *Lee v. Tucker*, 904 F.3d 1145, 1150 (10th Cir. 2018) ("The district court concluded that Lee sufficiently established the defendants never advised Lee that he was being detained and was not free to move about the house."). Under Plaintiff's version of the facts, no exigent circumstances existed and there was no probable cause to make an arrest. *Pauly v. White*, 874 F.3d 1197, 1221–22 (10th Cir. 2017) (third factor regarding resisting arrest weighed in favor of plaintiff when no exigent circumstances or probable cause existed to arrest).

Viewing the undisputed facts in the light most favorable to Plaintiff, the Court concludes that the evidence is sufficient for a reasonable jury to find that the Defendant Aguilar's use of force was not objectively reasonable.

### B. <u>Constitutional Violation was Clearly Established</u>.

"The law is clearly established if there is a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, that has found the law to be as the plaintiff maintains." *Gadd v. Campbell*, 2017 WL 4857429, at *4 (10th Cir. 2017). "A clearly established right is one

9

that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, ––– U.S. ––––, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks omitted). "Clearly established law should not be defined at a high level of generality." *White v. Pauly*, ––– U.S. ––––, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (internal quotation marks omitted). Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.*

Plaintiff bears the burden of citing to case law and articulating the clearly established right she claims had been violated. *See Thomas v. Durastanti,* 607 F.3d 655, 669 (10th Cir. 2010); *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007) ("[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." (internal quotation marks omitted)).

The Court finds the facts relevant to the clearly established prong as follows: (1) Mr. Lucero was not actively resisting or evading arrest at the time force was used; (2) he was getting his shoes to put on; (3) when officers entered the apartment, he had one hand up while holding shoes in his other hand; (4) there was no indication he posed an immediate threat to others; (5) PSD Leo was released, and force was applied before Mr. Lucero could comply with the Defendants' orders; (6) the dog attack continued for 33 seconds, continuing after he was compliant; (7) Mr. Lucero was not under arrest for a crime; (8) officers were told he did not possess a gun; (9) while he was prone on the ground and couch, Defendant Aguilar further aggressed PSD Leo.

The Court concludes that under Plaintiff's facts above, Tenth Circuit and Supreme Court case law "made it clear to any reasonable officer in the [Defendant Aguilar's] position that the [] force was unconstitutional." *McCoy v. Meyers*, 887 F.3d 1034, 1052 (10th Cir. 2018), *quoted in McCowan v. Morales*, 945 F.3d 1276, 1287 (10th Cir. 2019). In *McCoy* and *McCowan*, the Tenth

Circuit held that particularized facts are not necessary where, as here, the plaintiff was not accused of a serious crime, not a threat and not actively resisting. *Id*.

"[A]n officer's violation of the *Graham* reasonableness test is a violation of clearly established law if there are no substantial grounds for a reasonable officer to conclude that there was a legitimate justification for acting as [he] did." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007) (internal quotation marks omitted), *quoted in Osterhout v. Morgan*, 763 F. App'x 757, 763 (10th Cir. 2019). The Tenth Circuit has concluded "force was unconstitutional when it was used against plaintiffs "who were not suspected of serious crimes, posed little to no threat, and put up little to no resistance." *McCoy*, 887 F.3d at 1052 n.21 (describing Tenth Circuit cases predating the present incident). Here, under Plaintiff's version of the undisputed facts, a reasonable officer would look to the *Graham* factors and realize that Mr. Lucero was not suspected of a serious crime, posed no threat to others or the officers, was unarmed and did not actively resist or evade arrest.

The Court acknowledges there is no published Tenth Circuit case exactly on point discussing the use of a police service dog. However, the lack of a case on the manner of force (use of a police service dog) used is not dispositive here. *McCowan v. Morales*, 945 F.3d 1276, 1287 (10th Cir. 2019) ("It seemed clear and well established to our court in McCoy that when an officer inflicts gratuitous force against a fully compliant and subdued arrestee he is not protected by qualified immunity even though there has not yet been a case involving the precise manner that the officer chose to inflict that unconstitutional force."); *See also Cooper v. Brown*, 844 F.3d 517, 525 (5th Cir. 2016) ("Lawfulness of force ... does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel.").

Moreover, the clear weight of authority in other circuits holds that, under the facts cited above, it was clearly established that the force used under the circumstances in this case would constitute a Fourth Amendment excessive force violation. *See Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (in reference to use of police service dog, "[I]t was clearly established that excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force that would be a constitutional violation."); *Cooper v. Brown*, 844 F.3d 517, 525 (5th Cir. 2016) (affirming denial of qualified immunity where police dog "continued biting [the nonresistant suspect] for one to two minutes"; officer did not command the dog to release his bite until suspect had rolled onto his stomach and was in handcuffs; and officer had "no reason to believe that [the suspect] posed a threat"); *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 733 (7th Cir. 2013) (observing that prior to 2011 it was well-established that "police officers cannot continue to use force once a suspect is subdued," and "officers could not repeatedly use an impact weapon to beat into submission a person who was not resisting or was merely passively resisting officers' orders"); *LaLonde v. County of Riverside,* 204 F.3d 947, 961 (9th Cir. 2000) ("the use of such weapons (e.g., pepper sprays; police dogs) may be reasonable as a general policy to bring an arrestee under control, but in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of the weapon or a refusal without cause to alleviate its harmful effects constitutes excessive force"); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 923–24 (11th Cir. 2000) (holding it was objectively unreasonable for officers to allow a dog to bite and hold a suspect for two minutes—which it described as "an eternity"—where he was compliant with orders and not resisting arrest); *Arrington v. U.S.*, 473 F.3d 329, 339 (D.C. Cir. 2006) (reversing grant of qualified immunity amidst factual dispute as to whether arrestee was armed and not yet subdued when officers beat

him and ordered police dog to bite him); *Campbell v. City of Springboro*, 700 F.3d 779, 789 (6th Cir. 2012) (denying qualified immunity to an officer who "allowed a 'bite and hold' dog, whose training was questionable, to attack two suspects who were not actively fleeing and who, because of proximity, showed no ability to evade police custody."); *Becker v. Elfreich*, 821 F.3d 920, 924-25 (7th Cir. 2016) (affirming denial of qualified immunity on motion for summary judgment on claim that after arrestee had surrendered with his hands on his head, defendant officer used excessive force by pulling him down the steps and placing his knee on his back while allowing police canine to continue to bite him, a total of a "few minutes," resulting in arrestee's calf being "torn out completely," and permanent muscle and nerve damage). Therefore, the Court concludes that Defendant Aguilar's violation of Mr. Lucero's constitutional right was clearly established.

### III. Genuine Dispute of Material Fact.

Since the Court concludes that Plaintiff overcame Defendant Aguilar's qualified immunity, the Court next analyzes the Fourth Amendment excessive force claim under regular summary judgment standards. The Court has considered Defendant Aguilar's facts, Plaintiff's facts, and the record. The Court concludes that summary judgment in favor of Defendant Aguilar is inappropriate as to Count I because there is a genuine dispute of material fact whether (1) Mr. Lucero was a threat to the officers and whether (2) Mr. Lucero was actively resisting or evading arrest. Specifically, a reasonable jury could conclude that Defendant Aguilar knew Mr. Lucero did not have a weapon, and that he had his hands up and was not resisting when they released PSD Leo. Moreover, a reasonable jury could conclude that Mr. Lucero was not resisting on the ground when they further "aggressed" PSD Leo and that ordering PSD Leo to bite for 33 seconds was not reasonable under the circumstances.

## IV. Defendants' individual actions.

Defendant Aguilar was the officer who handled PSD Leo, released PSD Leo to attack Mr. Lucero, "aggressed" Leo to further attack Mr. Lucero, and ultimately told Leo to release Mr. Lucero. Therefore, denial of qualified immunity as to Count I is only appropriate as to Defendant Aguilar.

To the extent Plaintiff argues that the other Defendants should have stepped in, she has not clearly set out that argument or cited to relevant case law. Therefore, the Court concludes that Defendant Loomis is entitled to qualified immunity as to Count I.

## CONCLUSION

For the reasons stated above, Defendant Aguilar's motion for qualified immunity as to Count I (Excessive Force) fails. However, Defendant Loomis is granted qualified immunity as to Count I. Viewing the evidence in the light most favorable to Mr. Lucero, a reasonable jury could conclude that the force used by Defendant Aguilar violated Mr. Lucero's Fourth Amendment rights. Therefore, summary judgment is also denied as to Defendant Aguilar.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (**Doc. 30**) is **GRANTED IN PART** and **DENIED IN PART.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE